## HOGAN v. HELLMAN et al.

(District Court, S. D. California, S. D. August 15, 1925.)

### No. 1563–M.

1. **Bailment ⬤⇒21 — Respondent, facilitating gratuitous loan of corespondent company's fishing boat, held not tort-feasor, or liable for injury to one on board during voyage for which boat was loaned.**

Respondent, who facilitated gratuitous loan of corespondent company's fishing boat, *held* not tort-feasor, or liable for injury to one on board during voyage for which boat was loaned.

2. **Bailment ⬤⇒2 — Respondent, gratuitously loaning fishing boat to association for voyage, held gratuitous bailor.**

Respondent, gratuitously loaning fishing boat to association for voyage, *held* gratuitous bailor to such association.

3. **Bailment ⬤⇒21—Rules of care required for safety of either gratuitous passengers or passenger for hire do not apply to mere licensee.**

Rules of care required for safety of either gratuitous passengers or passenger for hire do not apply to mere licensee.

4. **Bailment ⬤⇒21—Libelant, who insisted on making certain voyage in fishing boat, assumed all risks incident to traveling on such boat on such voyage.**

Libelant, who insisted on making voyage in fishing boat after she and others were advised not to make voyage because of their light attire and limitations of boat, assumed all risks incident to traveling on such a boat on such voyage.

5. **Bailment ⬤⇒21—That boat rocked and rolled, because it lacked ballast, could not be asserted as negligence of owner, where weight of persons on board accomplished same purpose as ballast.**

That fishing boat rocked and rolled because it lacked ballast could not be asserted as negligence of owner, where weight of persons on board accomplished same purpose as ballast.

6. **Bailment ⬤⇒21—No liability held to attach to gratuitous bailor of boat for failure to ballast it, in absence of express or implied obligation to ballast.**

No liability to passenger attached to gratuitous bailor of boat for failure to ballast it, in absence of express or implied obligation to ballast.

7. **Bailment ⬤⇒21 — Captain of fishing boat gratuitously loaned for voyage held not negligent in taking homeward course on insistence of occupants of boat.**

Captain of fishing boat, which was gratuitously loaned for 50-mile voyage, and which was not free from violent rocking on a rough sea, *held* not negligent in taking homeward course at a time when the sea would become rough, where occupants of boat insisted on then returning to mainland.

8. **Negligence ⬤⇒1—Negligence causing no injuries not actionable.**

Negligence causing no injuries is not actionable.

**9. Bailment ⊜⇒21 — Occupant of fishing boat gratuitously loaned for voyage held not entitled to recover from owner for injuries received from rocking and rolling of boat.**

Occupant of fishing boat, gratuitously loaned for voyage, *held* not entitled to recover from owner for injuries from rocking and rolling of boat, especially where she was advised not to make the voyage, because of limitations of boat for the purpose for which it was loaned.

In Admiralty. Libel by May F. Hogan against Marco H. Hellman and another. Decree for respondents.

Thomas D. Long and F. W. Turcotte, both of Los Angeles, Cal., and May F. Hogan, for libelant.

Page, Nolan, Rohe & Hurt, of Los Angeles, Cal., for respondents.

McCORMICK, District Judge. This is a libel in personam against respondents Marco H. Hellman, individually, and Hellman Commercial Trust & Savings Bank, a corporation. The claim is for money damages on account of personal injuries alleged to have been sustained by libelant while being gratuitously transported in a certain fishing boat, called Traveler, from the port of San Pedro, Cal., to San Clemente Island, in the Pacific Ocean. It is alleged that the fishing boat Traveler was unseaworthy, unfit, and unsafe for the carrying of libelant on said voyage, and that by reason thereof and of respondents' negligence libelant has sustained injuries and damage to the extent of $100,300 lawful money of the United States, for which amount she asks a decree against respondents.

The case is unique. Neither proctor, in argument or on brief, has cited any analogous or parallel case in admiralty, and I have not discovered any by an extended independent research. The decision of this cause must therefore be based upon principle, rather than upon authoritative analogous decisions of admiralty courts.

The serious and close question in the cause is whether, under the facts as shown by the evidence, respondents' liability has been established. I am of the opinion that, although libelant may have sustained injuries on the voyage on the Traveler, she is not entitled to recover damages therefor from the respondents herein. The pertinent facts found by the court may be stated as follows:

Some time in May, 1923, an incorporated nonprofit association of citizens of California, styled the "American Narcotic Crusade," decided to take an ocean voyage to the Island of San Clemente, situate about 50 miles from the mainland. The purpose of the excursion was twofold—primarily, to gain publicity for the association in its work of combat against the so-called drug evil; and, secondarily, so that the members thereof could inspect and survey San Clemente Island as an adaptable place for the treatment of drug addicts. One Rex Goodcell, who was a member and officer of the association, either volunteered to or was delegated by the association to arrange for and procure means of transportation for the voyage, and accordingly called on respondent Marco H. Hellman, who was and is an executive officer of the respondent Hellman Commercial Trust & Savings Bank, a corporation. Goodcell solicited the loan of a private yacht, which Hellman personally owned, for the contemplated voyage.

Neither of the respondents are or were members of the American Narcotic Crusade, and neither of them had any knowledge of the contemplated voyage and excursion, until Goodcell solicited the loan of the yacht from Hellman. Neither of the respondents had taken any part in the activities of the American Narcotic Crusade, and neither of the respondents were to or did receive any benefit whatsoever from the association, or on account of the voyage which resulted in this suit. The loan of the boat and its crew was purely gratuitous.

At the time Goodcell solicited the loan of the yacht from Hellman he was the United States collector of internal revenue for the Southern California district and was a personal friend of respondent Hellman. Hellman informed Goodcell that his yacht was unavailable at the time, as it was then being painted. He told Goodcell, however, that the Hellman Commercial Trust & Savings Bank had some fishing boats, and that he might be able to get one of them for him, asking Goodcell whether a fishing boat would meet his requirements; and, upon Goodcell replying that it would be highly satisfactory for the trip, Hellman instructed his private secretary to arrange to have the fishing boat Congress, the property of the respondent corporation, ready to take a party with Collector Goodcell to San Clemente Island on June 1, 1923.

Respondent Hellman personally had no further or other connection with the matter involved in this suit in any way, except to tell his private secretary to provide the crew for the boat. He did request of Goodcell that he be permitted to furnish the lunch for the party, but was told by Goodcell that a member of the association wished to supply the food for the party. Hellman did

not furnish any victuals for either the party or the crew. Hellman did not know and was not informed exactly how many or specifically what persons were going to make the trip, and he assumed, according to the evidence, that the voyage was to be a business trip of Goodcell's in his capacity as a government officer, because Goodcell told him that he intended using a government boat for the cruise, but could not do so, as he was to be accompanied by his wife, Mrs. Goodcell, and there was a government regulation that ladies were not permitted on such boats on such trips.

Hellman's private secretary communicated with and advised one Thomas, who was manager of the respondent corporation at San Pedro, Cal., of Goodcell's solicitation, and requested and instructed Thomas to have the Congress ready at a certain landing place in Wilmington Bay, Cal., on the morning of June 1, 1923. Thomas got in touch with one Barcot, a watchman of the bank, and told him to reach one Zabica, who was an experienced fisherman and boatman, and have Zabica get the Congress ready to go out as requested. Zabica reported to Thomas that the Congress was not available, on account of the condition of the batteries therein, and upon Zabica's suggestion Thomas directed that the fishing boat Traveler be substituted and used for the contemplated trip. The Traveler was also property of the respondent corporation, and the substitution and use of it in lieu of the Congress was unknown and unauthorized by respondent Hellman personally, but was an act of Thomas on his own initiative.

On the morning of June 1, 1923, pursuant to invitations sent out by the association to its members without the knowledge of respondents, a party of 16 or more men and women, consisting of officers and members of the association, photographers, and newspaper men, assembled at the place of embarkation for the contemplated voyage. The libelant, Miss Hogan, was a member and officer of the association, had been invited without the knowledge of either respondent to take the trip, and was a member of the party that assembled.

When Goodcell saw and inspected the Traveler, he observed its size, equipment, and condition, and noticed, also, the light summer attire of the party assembled, and particularly of the ladies thereof. Thereupon he called the entire group of men and women together, and addressed them en masse, in an effort to dissuade them all, and especially the ladies, from taking the trip

in such light attire and upon the Traveler, calling attention of all to the limitations of the boat, as well as to the fact that it was a fishing boat. The Traveler was in plain view of the entire party, including the libelant, and all had ample opportunity to decline to go aboard. One of the ladies of the party, who apparently acted as spokesman, objected to postponing or deferring the voyage, as it had been given wide publicity, and all of the others acquiesced. The libelant, Miss Hogan, made no protest or objection, but went aboard.

After it was decided by the assembled group of men and women to take the trip on the Traveler, Mr. Goodcell and others of the party stated that they would endeavor to make the boat as comfortable as possible, in view of the determination of the party to go, and of their own volition and suggestion they brought to the Traveler some canvas for covering and protection against anticipated wind and wave, and also some collapsible or folding chairs, which they arranged in the Traveler and upon the deck thereof. The craft was merely a purse seine fishing boat, and was not fitted, equipped, intended, or used for passenger service. It was, however, a seaworthy, safe, secure, and adequately equipped purse seine fishing boat, with gasoline engine and equipped with several bunks below.

After these preparations had been made in the presence of all, including libelant, the Traveler sailed out into the ocean with libelant and 16 or more men and women aboard. As it entered the trough of the sea in the channel between the mainland and Santa Catalina Island, libelant became violently seasick, and on account of the rocking and rolling of the boat she was thrown or fell against an iron rail on the boat, and was also struck by the chair that was thrown about the deck as a result of the sea. On the outward passage, at some point which is uncertain, on account of a conflict in the evidence, a turntable which was part of the fishing equipment of the boat became unfastened and swung around, throwing several of the party who were upon it in a heap on the deck, and in the scramble one of the ladies accidently kicked libelant in the back. Libelant was not upon the turntable at the time, but so close thereto that the lady came in contact with her in the manner stated.

Although the day was serene and clear, and the weather mild, and the sea reasonably calm, until the boat started homeward bound from San Clemente Island, the spray and wind caused libelant to be uncomfortable

and cold, and, added to her seasickness, she became quite miserable. However, she complained of and manifested no injuries or illness on the entire trip, except nausea; and· when asked if she had been hurt,` by striking the chair or railing, or by the turntable incident, she said that she had not. It was not until some time after the voyage was completed that she made any complaint of serious injury or ailment.

On the course to San Clemente Island, and at the direction of the party, the boat put in at Avalon harbor, Santa Catalina Island, and .some of the party went ashore in a small boat to buy food for the party, later returning to the Traveler with the food. A photographer, who had been a member of the party from Wilmington, left the boat at Avalon, saying that he did not desire to continue, but would return to the mainland by other means. The libelant, Miss Hogan, could have gone ashore at Avalon, but did not do so, and did not request or demand that she be taken ashore, or that she be permitted to leave the Traveler, but instead, of her own volition, and notwithstanding the knowledge that she had gained of the boat's movements and of the condition of the sea, she remained on board the Traveler on the voyage to San Clemente Island.

The sea between Santa Catalina and San Clemente Islands is always turbulent and rough, and strong winds are usually encountered on this passage. Such conditions prevailed on the day in question. But nothing eventful or extraordinary occurred until the Traveler left San Clemente Island for the mainland along toward dusk on June 1, 1923. Upon arrival at San Clemente Island in the late afternoon, the Traveler was anchored in a sheltered place, and most of the party went ashore on the island to make the survey and inspection, which was one of the objects of the trip. Miss Hogan remained aboard, however, on account of her indisposition, but did partake of the luncheon which was served aboard the Traveler to the party before sailing homeward.

There was some debate between Goodcell and the captain as to whether an attempt should be made to return to the mainland at once, or whether the party should stay overnight on San Clemente Island. The captain, who had been supplied by Mr. Thomas, called attention to the hazard of attempting to return at night, stating that the sea was especially rough between Santa Catalina and San Clemente Islands at night, and that he thought it would be better to return the following morning, when it was more calm.

But Mr. Goodcell and some others of the party persuaded the captain to sail on the return trip and not stay overnight at San Clemente Island.

The Traveler had not proceeded far when nightfall set in, and the boat rocked so violently that most of the party became frightened and were ordered below by the captain. Some of the ladies, including libelant, occupied the bunks and were protected from the spray and wind as much as possible by coverings. One of the crew, Nicholas Batistich, by name, in attempting to comply with an order from the captain to go below, where most of the party had gone, was thrown overboard and drowned. A libel by his administratrix on behalf of dependent relatives was heard simultaneously with this proceeding, and has also this day been decided. 7 F.(2d) 953.

The evidence indicates that knowledge of the drowning of Batistich was kept from most of the party, and particularly the ladies thereof, and that they did not know of it until the following day, when the Traveler reached the mainland. A short time after Batistich was thrown overboard the captain concluded that, because of the high sea and wind, it was safer to return to San Clemente Island than to attempt to make the port of Wilmington that night, and he turned the Traveler around and sailed back to San Clemente Island, where all of the party, including libelant, remained all night on board the Traveler; Miss Hogan occupying one of the bunks and being supplied with such covering as was available.

Early the following morning, when the sea was calm and the wind had subsided, the Traveler sailed homeward and docked at Wilmington harbor the same day. Whereupon the party, including libelant, disembarked and dispersed. Just after leaving San Clemente Island, homeward bound, a tiller rope aboard the Traveler broke and was repaired in a very short time. No one was injured or damaged by this incident, and it is of no significance whatever in the determination and decision of this libel, as it occasioned no injury of any kind to libelant or any other person, and because it happened in calm water and did not incapacitate the Traveler at all. ·

[1-3] Under the aforesaid facts and circumstances, the respondent Hellman cannot be considered a tort-feasor, or in any manner personally liable for Miss Hogan's injuries. The status of respondent Hellman Commercial Trust & Savings Bank toward the party was that of a gratuitous bailor.

In my opinion, libelant and the others of the party were not passengers in any legal sense. There is authority for holding libelant a mere licensee, and, if such be her true status, then the rules of care required for the safety of either gratuitous passengers or passengers for hire have no application. Lutvin v. Dopkus, 94 N. J. Law, 64, 108 A. 862.

The Narcotic Crusade and its agent, Goodcell, solicited the loan of the boat, and the act of the respondent Hellman Commercial Trust & Savings Bank in acceding to the request of Goodcell possessed none of the elements of a contract, and involved no invitation whatever which can bring this libelant within the rule of law applicable to passengers. It may be conceded, although not without doubt, that the rule of ordinary care toward libelant was required of respondent bank in this matter. The evidence shows, however, that it has met its obligation in this respect; the Traveler being seaworthy.

[4] The libelant sustained no injury that was not the result of the ordinary and known perils of the sea, or incidental to customary and normal movement of a boat such as the Traveler upon the surface of the ocean. Miss Hogan chose to take the voyage, after being fully informed and apprised of the size, condition, and equipment of the Traveler, and even remained aboard after reaching Santa Catalina Island, where she could have disembarked. All of the injuries of which she complains are the result of the elements, and no act of the crew proximately caused any of her hurts. Even after Goodcell advised her and the other ladies not to take the trip on the Traveler, she insisted on doing so, and under such circumstances, she must be held to have assumed all the risks incident to traveling on such a boat on such a voyage.

[5, 6] It is claimed that the boat rocked and rolled because it had no ballast. But the weight of those aboard tended to accomplish the same purpose as ballast. And, moreover, there being no express or implied obligation to ballast, under a gratuitous bailment such as shown by the evidence in this libel, no liability attached because of the failure to ballast the boat.

[7, 8] There was no negligence on the part of the captain in leaving San Clemente Island homeward on the evening of June 1st, and, if such act should be characterized as negligent, it is no aid to libelant's case, as she sustained and suffered no injury whatever by reason of it. And just as soon as good judgment and sound discretion dictated to the captain that it was unwise to attempt to make the passage further he returned to shelter at San Clemente Island.

[9] In view of my conclusion that no negligence or liability whatever has been proven against either respondent, it becomes unnecessary to consider the question of libelant's damage.

Proctors for respondents will prepare a decree in accordance with this memorandum opinion and the answer to the amended libel, and present the same under the rules.